UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

LARRY L. SHIVELY,                           )
                                            )
            Plaintiff,                      )
                                            )
    v.                                      )    No.  2:18 CV 05 CDP
                                            )
NANCY A. BERRYHILL, Deputy                  )
Commissioner of Operations for             )
Social Security,[1]                         )
                                            )
            Defendant.                      )

## MEMORANDUM AND ORDER

Plaintiff Larry L. Shively brings this action under 42 U.S.C. §§ 405 and

1383 seeking judicial review of the Commissioner's final decision denying his

claims for disability insurance benefits (DIB) under Title II of the Social Security

Act, 42 U.S.C. §§ 401, *et seq.*, and for supplemental security income (SSI) under

Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq.*  Because the Commissioner's final

decision is supported by substantial evidence on the record as a whole, I will affirm

the decision.

## Procedural History

On December 16, 2014, the Social Security Administration denied Shively's

September 2014 applications for DIB and SSI, in which he claimed he became

---

[1] Nancy A. Berryhill's term as Acting Commissioner of Social Security expired in November
2017.  She continues to lead the agency as Deputy Commissioner of Operations.

disabled on September 8, 2014, because of proliferative diabetic retinopathy, diabetes, hypertension, hypercholesterolemia, back injury, vision problems, and cataract. A hearing was held before an administrative law judge (ALJ) on January 10, 2017,[2] at which Shively and a vocational expert testified. On March 1, 2017, the ALJ denied Shively's claims for benefits, finding the vocational expert's testimony to support a finding that Shively could perform work as it exists in significant numbers in the national economy. On December 12, 2017, the Appeals Council denied Shively's request for review of the ALJ's decision. The ALJ's decision is thus the final decision of the Commissioner. 42 U.S.C. § 405(g).

In this action for judicial review, Shively claims that the ALJ's decision is not supported by substantial evidence on the record as a whole. Specifically, Shively argues that the ALJ erred in assessing his residual functional capacity (RFC) by improperly weighing the medical opinion evidence of record, ignoring other significant medical evidence, and improperly substituting her own opinion for the medical evidence. Shively also claims that the ALJ improperly discounted his subjective complaints. Shively asks that I reverse the ALJ's decision and award benefits or, alternatively, remand the matter to the Commissioner for further proceedings.

For the reasons that follow, the ALJ did not err in her determination.

---

[2] A hearing scheduled for August 11, 2016, was postponed to give Shively the opportunity to obtain representation.

**Medical Records and Other Evidence Before the ALJ**

With respect to the medical records and other evidence of record, I adopt Shively's recitation of facts set forth in his Uncontroverted Statement of Facts (ECF 15) to the extent they are admitted by the Commissioner (ECF 22-1). I also adopt the additional facts set forth in the Commissioner's Statement of Additional Facts (ECF 22-2) and note that they are unrefuted by Shively. Together, these statements provide a fair and accurate description of the relevant record before the Court.

Additional specific facts will be discussed as needed to address the parties' arguments.

**Discussion**

A. <u>Legal Standard</u>

To be eligible for DIB and SSI under the Social Security Act, Shively must prove that he is disabled. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will be declared disabled

"only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner engages in a five-step evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The first three steps involve a determination as to whether the claimant is currently engaged in substantial gainful activity; whether he has a severe impairment; and whether his severe impairment(s) meets or medically equals the severity of a listed impairment. At Step 4 of the process, the ALJ must assess the claimant's RFC – that is, the most the claimant is able to do despite his physical and mental limitations, *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) – and determine whether the claimant is able to perform his past relevant work. *Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005) (RFC assessment occurs at fourth step of process). If the claimant is unable to perform his past work, the Commissioner continues to Step 5 and determines whether the claimant can perform other work as it exists in significant numbers in the national economy. If so, the claimant is found not to be disabled, and disability benefits are denied.

The claimant bears the burden through Step 4 of the analysis. If he meets this burden and shows that he is unable to perform his past relevant work, the burden shifts to the Commissioner at Step 5 to produce evidence demonstrating that the claimant has the RFC to perform other jobs in the national economy that exist in significant numbers and are consistent with his impairments and vocational factors such as age, education, and work experience. *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012). If the claimant has non-exertional impairments, such as pain or postural limitations, the Commissioner may satisfy her burden at Step 5 through the testimony of a vocational expert. *Pearsall*, 274 F.3d at 1219.

I must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Jones*, 619 F.3d at 968. Determining whether there is substantial evidence requires scrutinizing analysis. *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those

positions, I must affirm the Commissioner's decision. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012). I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *McNamara*, 590 F.3d at 610.

B.      The ALJ's Decision

The ALJ found that Shively meets the requirements of the Social Security Act through December 31, 2019, and that he had not engaged in substantial gainful activity since September 8, 2014, the alleged onset date of disability. The ALJ found that Shively's type-2 diabetes mellitus with retinopathy, macular edema, cataract, post pan-retinal photocoautlation, hyperopia, astigmatism, presbyopia, and diabetic neuropathy were severe impairments, but that these impairments did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18.)[3] The ALJ found that Shively had the RFC to perform medium work, except that he should

> never climb ladders, ropes or scaffolds or be exposed to unprotected heights or hazardous work environments. He could frequently climb stairs or ramps and frequently balance, stoop, kneel, crouch, or crawl. He could perform tasks that require occasional far acuity with the right eye and frequent far acuity with the left eye. He could perform tasks that require no more than frequent field of vision or frequent near acuity in either eye. He would need to avoid concentrated exposure to bright flashing or flickering lights.

---

[3] The ALJ also found that Shively had hyperlipidemia and lymphadenopathy but that they were non-severe. (Tr. 19.) Shively does not challenge this finding.

(Tr. 19.) The ALJ determined that this RFC prevented Shively from performing his past relevant work as a rural postal carrier. (Tr. 23.)

Considering Shively's RFC and his age, education, and work experience, the ALJ found vocational expert testimony to support a conclusion that Shively could perform work as it exists in significant numbers in the national economy, and specifically as a salvage laborer and order filler. The ALJ therefore found Shively not to be disabled. (Tr. 24.)

C.    Analysis

Shively claims that the ALJ erred in her RFC assessment because she improperly discredited his subjective complaints, improperly weighed the medical opinion evidence, ignored other substantial evidence of record, and improperly substituted her own opinion for the medical evidence.

A claimant's RFC is the most he can do despite his physical or mental limitations. *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). The ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of his symptoms and limitations. *Goff*, 421 F.3d at 793; *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1545(a), 416.945(a). Accordingly, when determining a claimant's RFC, the ALJ must necessarily

evaluate the consistency of the claimant's subjective complaints with the evidence of record. *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007); *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005). In addition, because a claimant's RFC is a medical question, "the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace." *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001). Some medical evidence must support the ALJ's RFC determination. *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010); *Hutsell*, 259 F.3d at 711-12. The burden to prove the claimant's RFC rests with the claimant, however, and not the Commissioner. *Pearsall*, 274 F.3d at 1217.

1. *Evaluation of Symptoms*[4]

For purposes of social security analysis, a "symptom" is an individual's own description or statement of his physical or mental impairment(s). SSR 16-3p, 2017 WL 5180304, at *2 (Soc. Sec. Admin. Oct. 25, 2017) (republished). If a claimant makes statements about the intensity, persistence, and limiting effects of his symptoms, the ALJ must determine whether the statements are consistent with the medical and other evidence of record. *Id.* at *8.

---

[4] The Social Security Administration issued a new ruling that eliminates the use of the term "credibility" when evaluating a claimant's subjective statements of symptoms, clarifying that "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2017 WL 5180304, at *2 (Soc. Sec. Admin. Oct. 25, 2017) (republished). The factors to be considered in evaluating a claimant's statements, however, remain the same. *See id.* at *13 ("Our regulations on evaluating symptoms are unchanged."). *See also* 20 C.F.R. §§ 404.1529, 416.929. This new ruling applies to the Commissioner's final decisions made on or after March 28, 2016.

When evaluating a claimant's subjective statements about symptoms, the ALJ must consider all evidence relating thereto, including the claimant's prior work record and third party observations as to his daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; and any functional restrictions. *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history omitted). If the ALJ finds the statements to be inconsistent with the evidence of record, she must make an express determination and detail specific reasons for the weight given the claimant's testimony. SSR 16-3p, 2017 WL 5180304, at *10; *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012); *Cline v. Sullivan*, 939 F.2d 560, 565 (8th Cir. 1991). Here, after finding at Step 3 of the sequential analysis that Shively's impairments did not meet the criteria for listing-level disability, the ALJ evaluated Shively's statements of symptoms and assessed his RFC. The ALJ addressed each of the *Polaski* factors and made specific findings that Shively's claimed symptoms were inconsistent with the record. Because these findings are supported by substantial evidence on the record as a whole, I must defer to the ALJ's determination. *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016).

First, the ALJ noted that Shively claimed disability because of his poor

eyesight but that Shively recently went deer hunting, which suggested that he was able to see well enough to shoot at a target.[5]  The ALJ also noted that Shively believed he could drive a car once he got a new prescription for corrective lenses[6] and, further, that no doctor imposed driving restrictions or opined that he could not work because of his vision.  An ALJ's observation that no treating physician imposed any work-related restrictions supports a determination that the claimant's complaints of disabling conditions are not entirely consistent with the record.  *See Brown v. Chater*, 87 F.3d 963, 965 (8th Cir. 1996).  Further, the ability to engage in activities that require visual acuity is inconsistent with a claim that vision problems are disabling.  *See Thurn v. Apfel*, 994 F. Supp. 1156, 1167 (W.D. Mo. 1998).

To the extent Shively testified that he was limited by other physical conditions – such as numbness in his hands and feet, pain with walking, diarrhea, shortness of breath, dizziness, and fatigue – the ALJ noted that Shively provided other testimony that was inconsistent with these averred limitations, including that he could stand for two hours before needing to sit and could lift up to fifty pounds. The ALJ also noted Shively's report that he mowed the lawn, took out trash, cared

---

[5] Shively complains that the ALJ failed to consider that Shively walked only a short distance and sat during this recent hunting excursion, which he claims is consistent with his complaints of fatigue and limited walking ability.  The ALJ, however, considered Shively's hunting in relation to his ability to see and not in relation to his exertional abilities.

[6] Shively testified at the hearing that he did not drive because his driver's license had expired. (Tr. 39.)

- 10 -

for pets, did the laundry, performed car repairs, and went shopping. The ability to engage in these activities is inconsistent with Shively's complaints that his conditions were disabling. *See Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009); *Brown v. Barnhart*, 390 F.3d 535, 541-42 (8th Cir. 2004).

The ALJ also noted that the medical evidence did not support Shively's claims of chronic pain and fatigue, specifically noting that physical examinations were typically unremarkable and that after receiving a work excuse in September 2015 for "general fatigue," treatment records showed that he denied fatigue and had no physical complaints during office visits. Substantial evidence on the record as a whole supports these findings. (*See*, *e.g.*, Tr. 532-35, 541-43, 548-49, 554-57, 584-88, 604-08, 682-85, 1073-80.) Indeed, other than two isolated reports in April and June 2015 (Tr. 624, 641), a review of the record shows that Shively never complained of fatigue to any healthcare provider during the relevant period. "Contradictions between a claimant's sworn testimony and what he actually told physicians weigh against the claimant's credibility." *Frank v. Colvin*, 129 F. Supp. 3d 794, 806 (E.D. Mo. 2015) (citing *Karlix v. Barnhart*, 457 F.3d 742, 748 (8th Cir. 2006)).

Nor does the record show that Shively ever complained of dizziness or experienced shortness of breath. *Frank*, 129 F. Supp. 3d at 806. In addition, although Shively complained in November 2014 that he had difficulty walking

because of foot pain (Tr. 751), there is no indication in the record that Shively ever made any other similar complaints. Likewise, although Shively complained to his physician in March and April 2015 that he had numbness in his legs and feet, physical examinations during these visits were normal (Tr. 641-45, 710-12), including a sensory examination of the extremities (Tr. 711). No other complaints of numbness appear in the medical record; nor is there any evidence that any physical examination revealed any deficit. Where multiple examinations show no relevant abnormalities, an ALJ does not err in finding the medical evidence not to support a claimant's allegations of disabling symptoms. *Halverson*, 600 F.3d at 933.

The ALJ also noted that, when considering Shively's ability to work, Shively's primary treating physician recommended that he follow up with his eye doctor regarding the matter (Tr. 607), which the ALJ found significant in that it suggested that Shively's treating physician did not consider Shively's physical symptoms to be so limiting.

Finally, the ALJ found the record to show that, with treatment for his eye condition, Shively could see reasonably well.[7] The ALJ specifically noted that a physician's report from November 2016 stated that Shively could see 20/80 on the right and 20/30 on the left with correction. *See Gonzales v. Barnhart*, 465 F.3d

---

[7] Shively does not challenge any of the vision restrictions that the ALJ included in the RFC.

890, 895 (8th Cir. 2006) (ALJ may make factual determination that claimant's subjective complaints are not credible in light of objective medical evidence to the contrary). The ALJ also noted that Shively received only conservative treatment for other physical complaints with favorable results and no side effects. Where an impairment can be controlled by treatment, it cannot be considered disabling. *Wildman v. Astrue*, 596 F.3d 959, 965 (8th Cir. 2010); *Rhodes v. Apfel*, 40 F. Supp. 2d 1108, 1122 (E.D. Mo. 1999) (ALJ did not err in discrediting subjective complaints where evidence showed that symptoms were relieved through appropriate treatment). *See also Depover v. Barnhart,* 349 F.3d 563, 566 (8th Cir. 2003) (no medical records during relevant time period mention the claimant having side effects from any medication).

Accordingly, in a manner consistent with and as required by *Polaski*, the ALJ evaluated Shively's statements of symptoms on the basis of the entire record and articulated specific reasons in finding that Shively's symptoms were inconsistent with the record. Because this determination is supported by good reasons and substantial evidence, I must defer to it. *Julin*, 826 F.3d at 1086.

2. *Medical Opinion Evidence*

When evaluating opinion evidence, an ALJ is required to explain in her decision the weight given to any opinions from treating sources, non-treating sources, and non-examining sources. *See* 20 C.F.R. §§ 404.1527(e)(2)(ii),

416.927(e)(2)(ii).  The Regulations require that more weight be given to the opinions of treating physicians than other sources.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  A treating physician's assessment of the nature and severity of a claimant's impairments should be given controlling weight if the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Forehand v. Barnhart*, 364 F.3d 984, 986 (8th Cir. 2004).  This is so because a treating physician has the best opportunity to observe and evaluate a claimant's condition,

> since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

When a treating physician's opinion is not given controlling weight, the Commissioner must look to various factors in determining what weight to accord that and any other medical opinion of record, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, whether the physician provides support for her findings, whether other evidence in the record is consistent with the physician's findings, and the physician's area of specialty.  20 C.F.R. §§ 404.1527(c), (e); 416.927(c),

(e).  Inconsistency with other substantial evidence alone is a sufficient basis upon which an ALJ may discount a treating physician's opinion.  *Goff*, 421 F.3d at 790-91.  The Commissioner "will always give good reasons in [the] notice of determination or decision for the weight [given to the] treating source's opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

In this action, the ALJ determined to accord little weight to the opinion of Shively's treating physician, Dr. John Collins.  For the reasons that follow, the ALJ did not err in this determination.

Shively began seeing Dr. Collins as his primary physician in April 2016. Shively visited Dr. Collins four times between April 5 and June 28, 2016 (primarily for lab draws), during which time it was noted that Shively had no physical complaints or concerns.  He also had normal physical examinations during these visits with no recorded findings of fatigue, pain, or numbness.  (Tr. 532-57.)  Although fatigue was noted at a July 8 lab draw (Tr. 524), Shively reported on July 21 that he felt okay except for intermittent "belly aches."  (Tr. 516.)  On July 26, he had no complaints of fatigue.  (Tr. 652-53.)

On September 9, 2016, Shively visited Dr. Collins for the purpose of having Dr. Collins complete disability paperwork.  Review of systems on this date showed that Shively had no complaints.  Physical examination was normal in all respects. (Tr. 1078-80.)  On that same date, however, Dr. Collins completed a Medical

Source Statement (MSS) of Ability to Do Work-Related Activities wherein he opined that Shively's shortness of breath and near syncope limited him to:

- occasionally lift and carry twenty pounds,
- frequently lift and carry less than ten pounds,
- stand and walk less than two hours in an eight-hour workday,
- sit about three hours in an eight-hour workday,
- sit for only twenty minutes before needing to change position,
- stand for only ten minutes before needing to change position,
- walk once a day for five minutes, and
- lie down once a day for two to three hours.

(Tr. 736.)  Dr. Collins also opined that, because of impaired balance and numbness in his feet, Shively could never twist, stoop, bend, crouch, or climb ladders and could only occasionally climb stairs.  He also opined that Shively's hand numbness and impaired balance prevented him from handling, fingering, pushing, or pulling and limited him to only occasional reaching and feeling.  Dr. Collins further opined that Shively was environmentally limited in that he must avoid all exposure to extreme heat, extreme cold, and high humidity; avoid moderate exposure to fumes, odors, dusts, gases, and chemicals; and avoid concentrated exposure to perfumes, soldering fluxes, solvents, and cleaners.  (Tr. 737-38.)  Dr. Collins reported that Shively would need to take twenty-minute breaks every five minutes because of pain, paresthesias, and numbness and would miss work more than four days a month because of his impairments or related treatment.  Finally, Dr. Collins agreed that Shively's disability began in September

2014.  (Tr. 738-39.)

The ALJ gave Dr. Collins' opinion limited weight, reasoning first that it was inconsistent with Dr. Collins' own treatment records.  This reason is supported by substantial evidence on the record as a whole.  As noted by the ALJ, Dr. Collins' treatment records do not report any findings that Shively experienced any of the opined limitations and, indeed, the results of Dr. Collins' examinations of Shively were normal in all respects.  Further, as discussed above, the record shows that Shively did not complain to Dr. Collins that he experienced any of the symptoms described in the MSS; and to the extent Shively made such complaints to other healthcare providers, the record shows that these isolated complaints occurred in late 2014 and early 2015.  An ALJ does not err when she discounts a treating physician's medical opinion where the opined limitations stand alone and were never mentioned in the physician's numerous records of treatment.  *Cline*, 771 F.3d at 1104.  *See also Julin*, 826 F.3d at 1088 (opinions of treating physicians may be given limited weight if they are inconsistent with the record) (citing *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015)).

The ALJ also reasoned that the exertional limitations as opined by Dr. Collins were inconsistent with Shively's own testimony and admissions.  Indeed, as noted above, although Dr. Collins opined that Shively was limited to a total of less than two hours standing and walking throughout a workday, Shively testified

that he could engage in such activity two hours *at a time*. Dr. Collins' opinion that

Shively could walk only once a day and for only five minutes is also inconsistent

with Shively's reported activities of shopping, mowing, and engaging in regular

household chores.

Finally, I agree with the ALJ that Dr. Collins' opinion appeared to be based

on Shively's own subjective complaints and not upon any medical findings.

Because the ALJ properly discounted Shively's subjective complaints, she did not

err in discounting Dr. Collins' opinion that was based on these complaints. *Julin*,

826 F.3d at 1089.

Accordingly, because the ALJ's reasons to discount Dr. Collins' MSS are

supported by substantial evidence on the record as a whole, the ALJ did not err in

according only limited weight to the MSS. *Julin*, 826 F.3d at 1088.

3.      *Other Medical Evidence*

Shively complains that the ALJ's decision focuses only on his vision

impairment and ignores medical evidence of record establishing that he suffered

from other physical impairments related to his diabetes. Shively claims that the

ALJ erred by ignoring this other evidence and by substituting her own judgment

for such other evidence. As shown by the discussion above, Shively's argument

has no support in the record. The ALJ thoroughly summarized all of the medical

evidence and properly concluded that the medical and other evidence of record

failed to support Shively's assertion that other physical conditions affected his ability to engage in work-related activities.

4. *RFC to Perform Medium Work*

In his reply brief, Shively raises an additional argument that his mere ability to shop for two hours or lift a fifty-pound bag of dogfood on isolated occasions cannot support the ALJ's determination that he can perform medium work. A review of the ALJ's decision, however, shows that she did not base her exertional finding on only these considerations. To the contrary, the ALJ thoroughly discussed specific medical facts as well as the nonmedical evidence of record, addressed the consistency of this evidence when viewed in light of the record as a whole, and assessed Shively's RFC based on the relevant, credible evidence of record. *Accord* SSR 96-8p, 1996 WL 374184, at *7 (Soc. Sec. Admin. July 2, 1996). Because the RFC is supported by some medical evidence, it will not be disturbed. *See Steed v. Astrue*, 524 F.3d 872, 875-76 (8th Cir. 2008) (upholding ALJ's conclusion that claimant could perform light work based medical evidence showing largely normal objective findings or findings of mild conditions, despite fact that medical evidence was silent regarding work-related restrictions such as length of time she could sit, stand, and walk, and amount of weight she could carry); *Thornhill v. Colvin*, No. 4:12-CV-1150 (CEJ), 2013 WL 3835830, at *12 (E.D. Mo. July 24, 2013) (medical records showing that physical examinations

were essentially unremarkable and revealed normal findings constituted medical evidence in support of a finding that claimant could perform medium work).

## Conclusion

For all of the foregoing reasons, the ALJ's determination that Shively is not disabled is supported by substantial evidence on the record as a whole, and Shively's claims of error are denied.

Accordingly,

**IT IS HEREBY ORDERED** that that the decision of the Commissioner is affirmed, and plaintiff Larry L. Shively's complaint is dismissed with prejudice.

A separate Judgment is entered herewith.


_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE


Dated this 13th day of November, 2018.